L. T. BICE v. CITY OF HAINES CITY; W. C. LOCKHART, as Mayor-Commissioner; M. D. BRAF, as City Clerk; LETHA WOMACK, as City Treasurer; J. R. WADSWORTH and CLAY BINION, as City Commissioners; and WALLACE SHAFER, as City Attorney; and JOHN R. HILL, Intervenor.

195 So. 919
Opinion Filed January 16 ,1940
On Rehearing May 17, 1940

*Carver & Langston,* for Appellant;

*W. Wallace Shafer* and *Robert J. Pleus,* for Appellees.

*George Couper Gibbs,* Attorney General, and *Tyrus A. Norwood,* Assistant Attorney General, as *Amici Curiae.*

TERRELL, C. J.—In June, 1939, the City Commission of Haines City adopted a resolution authorizing its City Attorney to foreclose the City's liens acquired for nonpayment of taxes and special assessments on certain parcels of property located within the limits of the City. The appellant as complainant brought this suit to restrain the City Commissioners from carrying out said resolution. He grounds his case on the fact that all said parcels of land on which the City had acquired a lien were affected by and had reverted to the State under Section 9 of Chapter 18296, better known as the Murphy Act, and being so, were not amenable to the City's claim.

There was a motion to dismiss the bill of complaint but at this point, John R. Hill being the owner of a valid outstanding negotiable bond of the City dated July 1, 1920, and

maturing July 1, 1931, moved to be permitted to interven'e as a party defendant and file his answer to the bill to foreclose. His motion was granted. The intervenor by his answer contends that Section 9 of Chapter 18296 is violative of Section 10, Article I of the Constitution of the United States, and Section 17 of the Bill of Rights, Constitution of Florida. The motion to dismiss the bill of complaint was granted and the answer of the intervenor was sustained. This appeal was prosecuted from both decrees.

The first question urged challenges the validity of Section 9 of Chapter 18296 in that it seeks to divest municipalities of their liens acquired for the nonpayment of city taxes and vest a fee simple title in and to the lands covered thereby without making compensation therefor.

Since the entry of the order appealed from, this Court has in State *ex rel* Hurner v. Myrtle M. Culbreath, *et al.,* opinion filed October 6, 1939, answered this question contrary to the contention of appellant. Appellees contend that the last cited case does not conclude the question because of the holding of this Court in City of Sanford v. Dial, 104 Fla. 1, 142 So. 233, and like cases, wherein we held that under Section 894, Compiled General Laws of 1927, all lien's for State, County and Municipal taxes as distinguished from special assessments were on an equal footing.

We were mindful of this line of cases when we decided State *ex rel.* Hurner v. Culbreath, *supra,* but they do not affect the case at bar. While Section 894, Compiled General Laws of 1927, did have the effect of placing State, County, and Municipal tax liens on the same level, it .created no vested right in any of the entities holding them. It was competent for the Legislature to change the status

of the liens brought in question and Section 9 of Chapter 18296 accomplished that purpose.

It is next contended that as to the intervenor Section 9 Chapter 18296, is violative of Section 10 of Article I of the Federal Constitution in that it relieves all lands covered thereby from assisting to service his bond contract when all the lands within the corporate limits of the City were pledged for that purpose.

It is true that constitutional validity may be determined by practical operation and effect but we do not think that Section 9 of Chapter 18296 impairs the intervenor's contract. It had the effect of vesting a fee simple title in the State to all lands that had been certificated to the State for nonpayment of taxes more than two years prior to its passage. It is shown that the lands involved in this case had not paid any taxes for many years. They were accordingly a dead asset and were returning nothing to service the intervenor's contract.

Furthermore, the intervenor did not acquire a lien on any lands in the City to secure the payment of his bond. All he acquired under his bond contract was a pledge of the full faith and credit of the City of Haines City and the levy by it of an ad valorem tax to pay his bond. He is in position to enforce this pledge. He does not allege that he has a lien on the taxable property of the City or that the City is devoid of ample means to pay his claim exclusive of the lands brought in question.

It is a well settled principle of law that an Act of the Legislature will not be held in violation of the contract clause of the Federal Constitution unless it operates on the contract involved. Chapter 18296 in no way affects the intervenor's contract as a bondholder. The class of lands that it affects are in the main those on which fictitious values have been attached and by reason of which they

have yielded no taxes for any purpose for years. The ultimate purpose of Chapter 18296 was to restore these lands to the tax rolls at their real value and thereby enable them to bear their part of the tax burden.

The intervenor took his bond with knowledge that the Legislature could deal with all tax certificates covered by the Murphy Act in the manner that it did. No bond contract is thereby affected. The bondholder can proceed at any time to enforce an ad valorem levy sufficient to take care of his bonds and as soon as the lands vested in the State under Chapter 18296 are restored to the tax rolls, they will carry their part of the burden. This will improve rather than subtract from his security and the full faith and credit of the City is always present.

We have not overlooked the contention of appellee that Chapter 18296 impairs the ability of Haines City to perform its contracts with creditors in that it strikes out a substantial portion of its security which may be pledged for its obligations. In this contention, it confuses the object of its security. That lies in the full faith and credit of the City rather than in lands that have gone off the tax books for nonpayment of taxes.

In State ex rel. Hurner v. Culbreath, et al., supra, we held that the State's lien for nonpayment of taxes could be made paramount to that of the County, Municipality, Drainage or other taxing district. We further held that the State's lien could be satisfied to the exclusion of the liens of all subordinate taxing districts. We have never held and do not hold here the liens of subordinate taxing districts can be peremptorily cancelled. Some or all of them may vanish because of the paramount lien of the State.

Section 9 of Chapter 18296 applies to lands certified to the State for nonpayment of State and County taxes. It does not apply to special assessments such as drainage

taxes imposed on an acreage basis. Liens for the non-payment of such taxes accrue under different statutes; they do not vest in the State and are disposed of under different statutes by different agencies. We express no opinion as to when or under what circumstances such liens may give way to that of the State.

The judgment is reversed.

Reversed.

WHITFIELD, BROWN, BUFORD, CHAPMAN and THOMAS, J. J., concur.

WHITFIELD, J. (concurring).—Chapter 18296, Acts of 1937, known as the Murphy Act does not directly or indirectly refer to or deal with municipal tax sale certificates or purport to destroy or to in any way affect municipal tax liens or municipal taxing authority.

Section 1027 (796) C. G. L. provides that "Where land is bid off by the tax collector for the State, the tax certificate shall be issued by the tax collector to the State, in the name of the Treasurer, and if the land is not redeemed or the certificate sold by the State, the title to the land shall, at the expiration of the time for redemption, vest in the State without the issuing of any deed, as provided for in other cases, and the certificate shall be evidence of the title of the State and * * * it shall not be necessary for the State to procure a deed, but the title shall be held to be in the State, and the certificate shall be evidence of the title of the State."

"Any person, or agent of any person, owning or claiming such lands sold for taxes, or any part or parcel thereof, or any interest therein, or the creditor of any such owner or claimant may redeem the same at any time after such sale and before a tax deed is issued therefor, by paying to the clerk of the circuit court of the county wherein such

land is situated the face of the certificate of sale, or such portion thereof as the part or interest redeemed shall bear to the whole, and interest thereon together with the fee of fifty cents for the clerk of each certificate or part of certificate so redeemed." See Sec. 985 (770) Perm. Supp. to C. G. L., Sec. 9, Ch. 14572, Acts of 1929.

A municipality is not authorized to redeem State tax sale certificates covering lands when it has no title or property lien therein. The State acquires no title through municipal tax sale certificates or tax liens. See Stieff v. Hartwell, 35 Fla. 606, 17 So. 899.

Section 9, Chapter 18296, effective June 9, 1937, provides:

"This Act shall remain in full force and effect for two years from the date same shall become a law and at expiration of such * * * period, then the fee simple title to all lands, against which there remains outstanding tax certificates which on the date this Act becomes a law, are more than two years old, shall become absolutely vested in State of Florida, and every right, title or interest of every nature or kind whatsoever of former owner of said property or anyone claiming by, through or under him, or any one holding lien thereon shall cease, terminate and be at an end, and the State of Florida thereafter, through the Trustees of Internal Improvement Fund shall be authorized and empowered to sell the said lands to the highest and best bidder for cash at such time and after giving such notice and according to such rules and regulations as may be fixed and adopted from time to time by the said Trustees of the Internal Improvement Fund."

The title which vests in the State under the two quoted statutes, Section 1127 (796) C. G. L., and Section 9, Chapter 18296, is the same. Under the prior Act the privilege of redemption from the State tax sale, ends when a tax

deed is issued conveying the lands to the purchasers of tax sale certificates, or to the assignees of the certificates. Tax deeds under former statutes conveying in fee simple lands covered by tax sale certificates contained the following: "provided however that said land shall continue subject and liable for any unpaid taxes thereon." Sec. 10, Chap. 17457, Acts of 1935, Sec. 999 (145) Perm. Supp. C. G. L.

Under Chapter 18296, the privilege of redemption of land covered by tax sale certificates held by the State and covered by Chapter 18296, ended June 9, 1939, two years after Chapter 18296 became a law and operative on June 9, 1937.

Chapter 18296 deals *only* with tax sale certificates held by the State of Florida, that were more than two years old on June 9, 1937. Such certificates include delinquent State, county, county school, school district, and road and bridge district, taxes for the given year, and do not include municipal tax sale certificates, or municipal delinquent taxes or drainage district delinquent taxes unless so required by a valid statute. The statute does not purport to affect municipal tax sale certificates or tax liens, but expressly and specifically provides in Section 9 that at the expiration of two years from the date on which the Chapter became a law, the fee simple title to all lands against which there remain outstanding tax certificates (held by the State) which on the date the Act became a law (June 9, 1937) were more than two years old, "shall become absolutely vested in the State of Florida, and every right, title or interest of every nature or kind whatsoever *of former owner of said property or any one claiming by, through or under him, or any one holding lien thereon shall cease, terminate and be at an end.*" (Italics supplied.)

The fee simple title may be vested *subject to tax liens*

*not* covered by the tax sale certificates held by the State and covered by the Murphy Act.

The words "any one holding lien thereon" have reference to contract liens or statutory liens of persons or private corporations that are subordinate to all tax liens, and not to liens for taxes other than those included in the particular State tax sale certificates "together with all subsequent omitted or levied taxes" for State, county, county school, and school district, and road and bridge district purposes upon lands covered by the tax sale certificates held by the State, that were more than two years old on June 9, 1937, when Chapter 18296 became effective as a law. The "every right, title or interest of every nature or kind whatsoever" which "shall cease, terminate and be at an end" is that "of former owner of said property or any one claiming by, through or under him," not that of other taxing units not covered by the particular State tax sale certificates. See also the last paragraph of Section 9, Chapter 18296, Acts of 1937.

Section 1027 (796) C. G. L. vests in the State the title to lands covered by State tax sale certificates subject to redemption as may be provided by law, and Chapter 18296 in legal effect removed the then existing right or privilege to redeem lands covered by State tax sale certificates held by the State that were more than two years old on June 9, 1939; and the State then has the fee simple title to the lands covered by such tax sale certificates, or the portion thereof held by the State, discharged of the right of redemption, in so far as such title is affected by the tax liens covered by the particular State tax sale certificates held by the State. The title of the State is not by purchase for general State purposes. Such title is taken and held by the State as sovereign trustee for the purpose of conserving and enforcing payment of delinquent taxes, with

interest, costs, expenses, and penalties; and after paying· the State for expenses incurred in selling and conveying the land under the Murphy Act, to distribute the balance to the State, county, county school, and school and road and bridge district funds to· which it would have been distributed if the taxes had been paid before tax sale certificates were issued, or if the tax sale certificates had been redeemed or sold under prior Acts. See State *ex rel.* Maxwell Hunter, Inc., v. O'Quinn, 114 Fla. 222, text 233, 154 So. 166, Sec. 1004 (780) C. G. 'L. as amended in Chapter 15918, Acts of 1933.

Chapter 18296, Acts of 1937, relates to and affects only "tax certificates held by the State of Florida, that were more than two years old" on June 9, 1939, when Chapter 18296 became a law and effective. Such State tax sale certificates include ordinarily delinquent taxes for a given year due to the State, the county, the county schools, school districts and road and bridge districts in a county as may be provided by law; and such State tax sale certificates do not include delinquent municipal taxes or delinquent taxes of any drainage districts as to which the law provides for separate tax sale certificates to be issued. See Sec. 1543 (1173) C. G. L.

The terms, intent, purpose and object of Chapter 18296 do not in any way affect any tax sale certificates, tax liens or tax titles other than those covered by the tax sale certificates referred to in the Act itself. The Act does not purport to be applicable to or to in any way affect municipal tax sale certificates or municipal tax liens.

## On Rehearing

WHITFIELD, J.—The bill of complaint brought by L. T. Bice, a resident citizen taxpayer, against ·the city and its officials, alleges in effect that by resolution the City Com-

mission of the City of Haines City, Florida, attempted to determine that it was the holder of valid and outstanding liens against described property for unpaid *ad valorem* taxes and paving assessments duly levied and assessed against described parcels of land located within the corporate limits of said city, the greater portion of which lands are now owned by the State of Florida by virtue of Section 9, Chapter 18296, Acts of 1937, and the pretended liens of the defendant municipality have been extinguished by said Section 9, Chapter 18296; and did thereby authorize and direct the city attorney to institute proceedings to foreclose said *ad valorem* tax liens. and paving assessments liens against the respective parcels of land subject to such liens; that by such resolution the City Commission did attempt to authorize and direct the city attorney to make all persons and parties claiming any interest in any of said lands parties defendant in such foreclosure proceedings, including the State of Florida and the County of Polk, or the Trustees of the Internal Improvement Fund of the State of Florida, in accordance with the provisions of, and to accomplish the purposes provided for, in Chapter 18315, Acts of 1937, and Chapter 15038, Acts of 1931. (The latter Chapter provides for proceedings *in rem* to enforce tax liens, and the other Chapter authorizes the State to be made a party defendant in the foreclosure proceedings.)

It is in effect alleged that the expense of such foreclosure proceedings would be an unlawful burden on the taxpayers of the city, in that the asserted municipal liens have been extinguished by Section 9, Chapter 18296. It is also alleged that the city has a large bonded debt and other obligations that require heavy tax assessments which should not be increased by the expense of the contemplated municipal foreclosure proceedings upon the asserted municipal liens,

which expense is not provided for in the budgets or by appropriations.

The prayer of the bill asks injunction against enforcing the asserted tax and assessment liens of the city upon lands in the city, the title to which lands has become vested in the State under Section 9, Chapter 18296, Acts of 1937, known as the Murphy Act.

The motion of the defendants to dismiss the bill of complaint and a bondholders' petition of intervention allowed to be filed, present a question of the effect and constitutional validity of Section 9, Chapter 18296, Acts of 1937, referred to in the bill of complaint, upon the theory that said Section 9 violates tax lien property rights of the city, and also violates duly authorized contract rights of the holders of municipal bonds issued by the city and outstanding, to be paid by taxation of all the taxable property within the city limits. The lands upon which the municipal liens are claimed by the city were, when Chapter 18296 was enacted, and now are, within the territorial limits of the city. The intervenor alleges that the municipal tax liens sought to be foreclosed include taxes levied "solely for the payment of the debt service charges on bond issues."

The decree of the Chancellor contains the following: "* * * in passing upon the validity of the said Section 9 (of Chapter 18296, Acts of 1937), it seems to me that it must be treated as an attempt by the Legislature to vest the title to the lands involved in this suit outright in the State of Florida and thereby cancel and divest such rights and interests as the defendants and the intervenor have in and to said lands, and that the said Section 9 must stand or fall as so construed, and so construing said Section 9 of said Act, it is unconstitutional and invalid.

"WHEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND

DECREED. that the motion of the defendants to dismiss the bill of complaint be and the same is hereby sustained and granted, and that the answer of the intervenor be and the same is hereby held to be sufficient answer to the bill of complaint and that the bill of complaint be and the same is hereby dismissed."

An appeal was taken from such decree.

Prior to the Murphy Act of 1937, the State had title to all lands covered by State sale certificates held by the State at the expiration of the time for redemption. Sec. 1027 (796) C. G. L.; State *ex rel.* v. Leonard, 135 Fla. 760, 185 So. 870; Sec. 981 (776) C. G. L., amended by Sec. 8, Ch. 14572, Acts 1929; Sec. 985 (770) Perm. Supp. to C. G. L.; Sec. 9, Ch. 14572, Acts 1929. The Murphy Act in effect removed as of June 9, 1939, the right to redeem the lands described in certain tax sale certificates held by the State and covered by Chapter 18296.

The provisions of the Murphy Act, Chapter 18296, Acts of 1937, relate to the sale with privilege of redemption during two years from June 9, 1937, of "tax certificates held by the State of Florida that are more than two years old" on June 9, 1937, "together with all subsequent omitted or levied taxes" on the lands described in the tax certificates, such taxes being those due to the State and other taxing units having an interest in the tax certificates. The tax sale certificates cover described lands and the unpaid taxes assessed against the lands for the previous year.

Two years from June 9, 1937, the effective date of the Murphy Act, viz.; on June 9, 1939, the fee simple title to all lands, against which the state held tax sale certificates that were more than two years old on June 9, 1937, became absolutely vested in the State of Florida, and every right, title or interest of the former owner of the lands and

his privies, "or anyone holding lien thereon shall cease, terminate and be at an end." Sec. 9, Ch. 18296, Acts of 1937. This removed the right to redeem. The words, "or anyone holding lien thereon" as used in the statute have reference to private liens and not to municipal tax liens. Chapter 18296 does not expressly or by implication make municipal tax liens subordinate or inferior to State and county tax liens. The Act does not terminate any municipal tax liens. See concurring opinion in this case filed January 16, 1940.

Sales of State tax sale certificates under the Murphy Act were authorized to be made until June 9, 1939, and such sales were by the statute expressly required to include subsequent levied or omitted taxes against the lands described in the tax certificates, such taxes being authorized for the State and for county, school, and road and bridge districts, and other taxing units as provided by law. The tax sale certificates and the subsequent levied or omitted taxes referred to, do not include or cover unpaid municipal taxes. Tax sale certificates represent liens for taxes upon the lands described in the certificates for the stated years. Ridgeway v. Peacock, 100 Fla. 1297, 131 So. 140.

The Constitution expressly provides that municipalities shall make their own assessments of taxes for municipal purposes and for no other purpose. Sec. 5, Art. IX. Statutes specifically provide for municipal taxes to be issued separate and distinct from State tax sale certificates. See Sec. 979 (764) C. G. L.; Sec. 17, p. 674, Ch. 19853, Acts 1939.

All taxes imposed pursuant to the Constitution and laws of this State are a first lien on the property assessed and continue until paid. Sec. 894, C. G. L. Perm. Supp.; Sec. 124, Ch. 12790, Spec. Acts, 1927; City of Sanford v. Dial,

104 Fla. 1, 142 So. 233; City of Tampa v. Lee, 112 Fla. 668, 151 So. 316; Sec. 18, p. 648, Ch. 19853, Acts 1939.

It seems clear that as State and municipal tax liens are of equal dignity and as no tax lien and unpaid taxes of a municipality are included in a State tax sale certificate, and as municipal tax sale certificates of tax liens or unpaid taxes were not authorized to be sold under the Murphy Act, municipal tax sale certificates and tax liens legally existing upon the lands covered by the State tax sale certificates were not intended to be affected, and were not affected by the vesting of the title to the lands in the State without the right of redemption, by Section 9 of Chapter 18296, which Act does not terminate, cancel or annul municipal tax sale certificates or other evidences of municipal tax liens that are of equal dignity with State tax liens. Municipal tax sale certificates are referred to in Ranger Realty Co. v. Miller, 102 Fla. 378, 136 So. 546.

State, county and municipal taxation are made of equal dignity by statute, and all such taxation is in general superior to private contract, statutory or other non-taxation rights or liens. See Sec. 894 C. G. L. The State may be vested with fee simple title to lands subject to municipal tax liens; and the Murphy Act does not provide otherwise. There is no provision in the Murphy Act which in any way affects municipal tax liens for lawful municipal purposes, where the municipal levies and assessments were duly made and tax liens acquired, that are of equal dignity with State tax liens, before June 9, 1939. Taxes should not be assessed against the lands after they became vested in the State without the right of redemption under the Murphy Act, unless otherwise provided by law. Lands sold by the Trustees under the Murphy Act are subject to unpaid valid municipal tax liens acquired before the lands became vested in the State on June 9, 1939, and also subject to authorized

taxation after conveyance by the Trustees to private parties under the Murphy Act.

In State *ex rel.* Hurner v. Culbreath, filed October 6, 1939, the taxes due the drainage district were not alleged to be by statute *included* in the State tax sale certificates affected by the Murphy Act. See State *ex rel.* v. Sloan, 135 Fla. 179, 184 So. 781. In State *ex rel.* Groves v. Caruthers, filed February 16, 1940, the annual unpaid drainage district taxes were *by law included* in the State tax sale certificates.

On June 9, 1939, Section 9, Chapter 18296, Acts of 1937, known as the Murphy Act, vested in the State of Florida the fee simple title, without any right of redemption from State tax sales, to all lands described in the tax certificates held by the State on June 9, 1937, that were then more than two years old and that were not sold under said Chapter 18296 prior to June 9, 1939. Such statutory vesting in the State of the fee simple title to the said described lands, without the right or privilege of redemption, does not purport to destroy the legal effect of then existing valid municipal tax sale certificates or municipal tax liens, if any, under the statutes authorizing municipal taxation pursuant to Section 8, Article VIII, and Section 5, Article IX of the State Constitution.

The vesting in the State by the Murphy Act of the fee simple title to lands described in tax sale certificates held by the State as provided in the Murphy Act, undoubtedly extinguished all private contract or statutory non-taxation liens, such as mortgages or mechanics' or materialmen's liens, then existing against the lands, such liens being inferior to tax liens (Sec. 894 C. G. L.) ; but tax liens held by other taxing units which are by statute made of equal dignity with State tax liens, are not, unless otherwise duly provided, affected by such vesting of title in the State where

the tax liens of such other taxing units are not by law included in the tax sale certificates defined in the Murphy Act. While, unless otherwise provided by statute, taxes cannot be assessed against such lands during the time the fee simple title thereto is in the State without right of redemption in those who had a property interest in the lands when they were sold under the Murphy Act, yet when the lands were conveyed by the Trustees of the I. I. Fund to private ownership, they are then subject to authorized taxation as are other similarly situated lands, though contract or statutory liens such as mortgages or mechanics' and laborers' liens, are not restored by sales of the lands to private parties.

Section 9 of Chapter 18296, Acts of 1937, the Murphy Act, is not unconstitutional as alleged in this cause. Such section of the statute does vest in the State the fee simple title to the lands described in the tax sale certificates covered by the statute and remaining in the control of the State on June 9, 1939, but the statute does not destroy the municipal tax liens on the lands that were duly existing June 9, 1939, and are of equal dignity with State tax liens. Such municipal tax liens may be enforced as provided by law. It is necessary for the State to be made a party in authorized municipal tax foreclosure proceedings against lands, the fee simple title to which is vested in the State for a public governmental purpose.

Chapter 15038, Acts of 1931, together with Chapter 18315, Acts of 1937, authorize proceedings *in rem* to enforce municipal tax liens and give consent to make the State a party to such proceedings when the State has an interest therein.

Section 9, Chapter 18296, is not unconstitutional and void. The decree should have adjudged Section 9 to be valid, and dismissed the bill of complaint on the ground that

Chapter 18296, Acts of 1937, does not affect the duly acquired municipal tax liens that were existing on June 9, 1939, upon lands the title to which became vested in the State of Florida by virtue of the operation of Section 9, Chapter 18296, Acts of 1937.

In State *ex rel.* Hurner v. Culbreath, Clerk of the Circuit Court, *et al.,* 140 Fla. 634, 192 So. 814, the questions presented for decision were, whether the State tax sale certificates describing lands in Hillsborough County, held by the State and covered by Chapter 18296, Acts of 1937, the Murphy Act, which tax sale certificates were not sold under the Act prior to June 10, 1939, could be redeemed after June 9, 1939, through the Clerk of the Circuit Court under the statutes in force prior to the enactment of Chapter 18296; and whether the title to the lands described in such State tax sale certificates became vested in the State after June 9, 1939, without a right of redemption in any one; and whether such lands may legally be sold and conveyed by the Trustees of the Internal Improvement Fund of Florida under Section 9, Chapter 18296, Acts of 1937, the Murphy Act, without a right of redemption by parties who had an interest in the lands prior to June 10, 1939, it being alleged that Section 9, Chapter 18296 is invalid, because it "attempted to cancel all liens of any nature whatsoever held by the county or any special taxing district," including those "under the provisions of Chapter 10140, Laws of Florida, 1925," the latter being county highway assessments and liens. The lands in the Hurner case not being in a municipalitty, though in a special taxing district, the question as to whether liens of municipalities for unpaid municipal tax liens on lands in a municipality existing on June 9, 1939, were discharged or annulled by the operation of Section 9, Chapter 18296, the Murphy Act, was not involved in the matters presented for

decision in the Hurner case above; and the language of the opinion in that case must be interpreted with reference to the matters here involved.

The decree is reversed and the case is remanded for the entry of a decree adjudging Section 9, Chapter 18296, Acts of 1937, to be valid, and dismissing the bill of complaint on the ground that Chapter 18296, Acts of 1937, does not affect duly acquired municipal tax liens that were existing on June 9, 1939, upon lands the title to which became vested in the State of Florida by virtue of the operation of Section 9, Chapter 18296, Acts of 1937.

It is so ordered.

BUFORD, CHAPMAN and THOMAS, J. J., concur.

TERRELL and BROWN, J. J., dissent.