**PRINCE HALL MASONIC BUILDING ASSOCIATION, a corporation, not for profit, et al., v. CITY OF JACKSONVILLE, a municipal corporation.**

6 So. (2nd) 250                                                    En Banc
December 1, 1941                          On Rehearing February 20, 1942

J. Tom Watson, Attorney General, and Lawrence A. Truett, Assistant Attorney General, for appellant.

Austin Miller, Eli Finkelstein and John R. Adams, for appellee.

THOMAS, J.:

A suit was instituted in the circuit court by City of Jacksonville to foreclose municipal tax liens and special assessments on property, title to which had become vested in the State of Florida under the provisions of Section 9, Chapter 18296, Laws of Florida (Murphy Act), the original owner of the property, the State of Florida and others having been made parties defendant. The case proceeded to final hearing upon answers filed by the state and by the county of Duval, after decree pro confesso had been entered against the other defendants. The final decree provided for sale of the property and apportionment of the proceeds according to the amounts found due the city, the county and the state, respectively. The state appealed.

The first and principal question presented to us is the one concerning the power of the court to entertain a suit against the State of Florida in the circumstances which we have given, it being the position of the State, represented by the attorney general, that no authority existed for the inclusion of the State as a party to the suit.

Any right to bring suit against the State must be found in general law enacted in accordance with the terms of Section 22 of Article III of the Constitution whereby "Provision may be made by general law for bringing suit against the State as to all liabilities

now existing or hereafter originating." The only legislative authority that is cited to us authorizing a suit of this character is Section 1, Chapter 18315, Laws of Florida, Acts of 1937, providing that "In any suit in equity brought by any . . . city . . . of this State for the purpose of consummating the enforcement in tax lien foreclosure proceedings of its tax or assessment liens . . . against property located therein, the State of Florida may be made a party defendant in such proceedings for the purpose of adjudicating therein its *tax liens* against said property and receiving from the proceeds of any foreclosure sale in such proceedings its proper and proportionate share of such proceeds in satisfaction of its said tax liens so adjudicated; and the State of Florida does hereby *give its consent* to be sued and made a party defendant in *such suits* for *such purpose*" (italics supplied). The same section of the act concludes with a provision that in an action of that kind a county or taxing district may likewise be made a party defendant for the purpose of adjudication and satisfaction of its liens.

It cannot be gainsaid that the city has the right to foreclose its tax liens under Section 15038, Laws of Florida, Acts of 1931, but we do not find in that act any provision which will assist us in determining the question immediately present. It is doubtful that any authority to sue the state could have been given there in the view of the interpretation announced in State ex rel. Davis v. Love, 99 Fla. 333, 126 So. 374.

The determination of the first phase of the controversy must depend largely, if not entirely, upon a study of the Constitution, Chapter 18315, from which we have quoted, Chapter 18296 and the decision of

this Court in Bice v. Haines City, 142 Fla. 371, 195 So. 919.

The law upon which the city relies for authority to make the state a party must, under the rule which we have recognized in Kennard v. State Tuberculosis Board of Florida, 129 Fla. 619, 176 So. 872, be given a strict construction and when this is done it is apparent the state could have ben a party to the suit only in the case of the adjudication of a lien for its taxes.

Can the state's interest in the property involved in this suit be designated a lien in view of the provisions of Section 9, Chapter 18296, supra, wherein it was provided that title of land having the status of that sought to be sold in this litigation should become vested in the State of Florida in fee simple?

The reply to this challenge by the State of authority to make it a party in the present proceeding when the only consent relied upon is that given in Chapter 18315, supra, providing that it may be impleaded in a suit where it has a lien, is that this Court decided in Bice v. Haines City, supra, that the provisions of that Act were sufficient for the purposes. The rebutter on the part of the State is that our expressions there on that particular subject were obiter dicta.

It was written in the latter case that "It is necessary for the State to be made a party in authorized municipal tax foreclosure proceedings against lands, the fee simple title to which is vested in the State for a public governmental purpose," and in the next paragraph: Chapter 15038, Acts of 1931, together with Chapter 18315, Acts of 1937, authorize proceedings in rem to enforce municipal tax liens and give consent

to make the State a party to such proceedings when the State has an interest therein."

The language, considered alone and without reference to the questions presented and decided, could be easily and logically construed as a holding by this Court that the State was not only a necessary party but had given its consent to be included in a suit to enforce municipal tax liens even though the title to the property had become vested in the State under the so-called Murphy Act, but when the original file in the Bice case is scrutinized a different conclusion is reached. Chapter 15038 does authorize the foreclosure of municipal tax liens and Chapter 18315 does give consent of the State to be sued for the purpose of adjudicating its liens in the same suit but the question of authority to include the state in foreclosure where it had become the owner of property under Section 9 of the Murphy Act was not presented in the Bice case.

Our examination of the original record in that appeal shows that but two questions were presented, both dealing with the constitutionality of Section 9 of the Murphy Act "in so far as it purports to effect a vestiture of title to all lands within the purview of Section 9 of said Act, and by such vestiture to extinguish the tax lien of municipalities as against such lands" and so far as it affected the securities issued by the City before the passage of the Act. We were not required in that litigation to pass on the authority of the City to include the State as a party defendant. The State was not represented, while here it is present, protesting through the Attorney General.

Adverting to the language of the opinion on rehearing in the Bice case it seems fitting to observe that what we have quoted from it is not repudiated and we

feel that the State must be a party to a suit, such as the present one, where it is vested with title in fee simple to the lands on which the City, by the very terms of that opinion, still has its claim for unpaid taxes. It is literally true that the Sections of the statute, 15038 and 18315, supra, grant authority for the foreclosure generally of city tax liens and for inclusion of the State as a party in such proceedings, where the State also has a tax lien, but there has been cited to us specific legislative authority to make the State a party to suits for the foreclosure of City tax liens after fee simple title is vested in the State and our conclusion is that until this consent is forthcoming the cities are powerless to enforce their claims.

In the case of Cone, et al. v. Wakulla County, 143 Fla. 880, 197 So. 536, it was expressly decided that a suit against the Trustees of the Internal Improvement Fund to have a trust declared in favor of the county and taxing districts in lands held by the State under Section 9 of Chapter 18296, supra, or the proceeds from their sales, was in effect one against the State and could not be maintained because of lack of legislative authority. This pronouncement on the subject by the author of the opinion in Bice v. Haynes City, supra, seems ample authority for determination of the instant case contrary to the contention of the city and the county. See also Southern Drainage Dist., et al., v. State et al., 93 Fla. 672, 112 So. 561, and United States of America v. State of Alabama, 85 Law Ed. 1327.

Although the lien of the City remains unaffected by Section 9 of the Murphy Act it must look to the legislature for authority to make the State a party in the enforcement of its claim.

We realize that this may result in the sale by the State of lands held in fee simple under the Murphy Act subject to city tax liens and that until such sale the cities will be unable to enforce their claims but, basing our conclusion solely on the failure to show any legislative authority, we feel that so long as the title remains in the State or so long as that authority is withheld such foreclosure must be in abeyance.

Reversed.

WHITFIELD, TERRELL, BUFORD, and ADAMS, JJ., concur.

BROWN, C. J., concurs in part and dissents in part.

CHAPMAN, J., not participating.

BROWN, C. J., concurring in part and dissenting in part:

I fully concur in the holding in the foregoing majority opinion that no authority existed for making the State a party defendant in this suit which was instituted in the Circuit Court to foreclose municipal tax liens on property, title to which had become vested in the State of Florida under the provisions of Section 9 of Chapter 18296. It seems to me that this holding alone is determinative of this appeal. But I must dissent to the further holding in the majority opinion to the effect that if the State by legislative action should authorize suits against the State in cases of this kind, municipalities could then enforce municipal tax liens upon such properties, the title to which has become vested in the State under the provisions of the Murphy Act, citing as authority for this holding the case of Bice v. Haines City, 142 Fla. 371, 195 So. 919. With the greatest respect for the author of the opinion on rehearing in the Bice case and the other

members of the Court who concurred in that opinion (Mr. Justice Terrell and the writer dissenting) I am profoundly convinced that, if we are to rule on that question in this case at all, we should return to and follow the principles laid down in the opinion of Mr. Justice Terrell in the case of State ex rel Hurner v. Culbreath, 140 Fla. 634, 192 So. 814, wherein it was said:

"Is Chapter 18296 unconstitutional for the reason that the forfeiture to the State thereunder for non-payment of taxes destroys the lien of the county, municipality, drainage or other taxing districts previously acquired for the non-payment of their taxes?

This question must be answered in the negative. The power of taxation is a part of the sovereign power of the State. It inheres in the county, municipality, drainage, and other taxing districts only to the extent conferred by the State. It is quite true that instances may be pointed out in which State, county, municipal, and other district taxes have been made of equal dignity by legislative fiat but this is true only so long as the taxes are payable. When the lands revert to the State for non-payment of taxes, the lien of the State becomes paramount, and may be satisfied to the exclusion of all other liens.

Tax liens are creatures of statute and have no constitutional recognition as such. City of Sanford v. Dial, 104 Fla. 624, 142 So. 233. A tax does not become a lien unless made so by statute and the intent to create it must be clearly shown. The extent to which it is created is determined by statute but regardless of the entities that may be vested with it when it reaches a state of doubtful or speculative value, the claim of the State is at all times superior. When the

property is sold to satisfy the lien of the State, the lien of minor political entitites is divested in like manner that the claims of junior mortgages are extinguished at a foreclosure sale and the purchaser takes the title of the owner as well as the lien of the State. City of Paducah v. Green, 12 Ky. Ops. 701."

In the majority opinion on the original hearing in Bice v. Haines City, supra, which was likewise written by Mr. Chief Justice Terrell, and which was concurred in by all the other members of the Court, it was said that:

"The first question urged challenges the validity of Section 9 of Chapter 18296 in that it seeks to divest municipalities of their liens acquired for the nonpayment of city taxes and vest a fee simple title in and to the lands covered thereby without making compensation therefor.

"Since the entry of the order appealed from, this Court has in State ex rel. Hurner v. Myrtle M. Culbreath, et al., opinion filed October 6, 1939, answered this question contrary to the contention of appellant. Appellees contend that the last cited case does not conclude the question because of the holding of this Court in City of Sanford v. Dial, 104 Fla. 1, 142 So. 233, and like cases, wherein we held that under Section 894, Compiled General Laws of 1927, all liens for State, County and Municipal taxes as distinguished from special assessments were on an equal footing.

We were mindful of this line of cases when we decided State ex rel. Hurner v. Culbreath supra, but they do not affect the case at bar. While Section 894, Compiled General Laws of 1927, did have the effect of placing State, county and municipal tax liens on

the same level, it created no vested right in any of the entities holding them. It was competent for the Legislature to change the status of the liens brought in question and Section 9 of Chapter 18296 accomplished that purpose."

On rehearing in that case, by a four to two decision, this Court reversed its position and held that municipal tax sale certificates and tax liens existing on land covered by State tax sale certificates were not affected by the vesting of titles to such lands in the State under the Murphy Act (Chapter 18296); that the State became vested with the fee simple title of the lands subject to the municipal tax liens.

I think we should return to our first holding in the Bice case, and to the principles laid down in Hurner v. Culbreath. It seems to me that the language and the plain purpose of the Murphy Act requires us so to do. It is in line with the reasoning of the majority opinion in the case of Messer v. Lang, 129 Fla. 546, 176 So. 548, in which the constitutionality of the Murphy Act was upheld. It is also in line with the case of Ridgeway v. Reese, 100 Fla. 1304, 131 So. 136, and State ex rel. Dowling v. Butts, 111 Fla. 630, 149 So. 746.

The writer concurred in the opinion of the Court in Messer v. Lang, supra, which was written by Mr. Justice Terrell, and also wrote a concurring opinion in which I reviewed the previous decisions of the Court bearing on the questions there involved, in which opinion I reached the following conclusions which are in complete harmony with the holding in the subsequent case of Hurner v. Culbreath, and which were as follows:

"It appears therefore from the previous opinions and decision of this Court that from the *process of taxation,* as to which the Constitution requires uniformity, came to an end, at least so far as the State was concerned, when the effort to collect taxes failed, and the lands upon which taxes had not been paid were duly advertised and sold under the basic tax statute above referred to, and the delinquent owner failed to redeem within the two-year period allowed for redemption. If there were no bidders at the sale and the State therefore had to become and did become the purchaser, and the owner allowed the two years to expire without redemption, then and there the title vested in the State without the execution of a deed and the tax certificate issued at the sale became evidence of the State's title. Thus, the process of assessing and collecting taxes on the lands here involved, in so far as it was possible to collect them, had come to an end, the property taxed had been, in effect, confiscated, and taken by the State in the exercise of the tremendous but absolutely necessary power of taxation. And, as stated in the above quoted opinion of Mr. Justice Whitfield, when the State has become the purchaser at the tax sale and the period for redemption had expired the *tax certificate* became the property of the State, which it may dispose of in such manner as the Legislature may prescribe when no organic rights are thereby violated; and as stated by Mr. Justice Ellis in his concurring opinion, when this point is reached, 'the relation of the owner of the land to the State in respect of the tax which was assessed against him, and which became delinquent and by reason of which delinquency the land was sold, is completely changed,' and 'when the State becomes the

purchaser of the land at a tax sale it acquires a sort of property evidenced by the tax certificate which it is within the legislative power to sell or dispose of upon such terms and conditions deemed by that body to be wise and for the State's interest.'

"I find no provisions in our Constitution expressly prescribing or limiting the terms or conditions upon which the Legislature shall sell or dispose of tax certificates held by the State, or tax certificated lands."

There is no question about the authority of the legislature to deal with the subject which was dealt with in the Murphy Act. As was held in the case of Sanford v. Dial, 104 Fla. 1, 142 So. 233, the subject of tax liens is controlled by statutes, inasmuch as the constitution contains no regulation on that subject. So we must look to the intention of the legislature, and I think that intention was correctly interpreted in the cases of Messer v. Lang and Hurner v. Culbreath, and also on the original opinion of the Court written by Mr. Justice Terrell, in Bice v. Haines City, supra. Not only is this intention shown by the Preamble to Chapter 18296, the Murphy Act, but it is evidenced by the strong and emphatic language of Section 9 of that Act. And the legislature has so interpreted it. In the recent case of Cone, et al., v. Wakulla County, 143 Fla. 880, 197 So. 536, we called attention to the fact that the Trustees of the Internal Improvement Fund were vested with authority to sell the lands, the title to which had vested in the State under the Murphy Act, to the highest and best bidder for cash, but no authority, up to that time had been given by the legislature to said trustees to disburse the proceeds of the sales of such lands. A few months after that decision was handed down the legislature

did provide for the disbursement of such proceeds. See Chapter 20368 of the Acts of 1941 which was approved by the Governor on May 21, 1941. Section 1 of that Act reads as follows:

"Section 1. That the proceeds derived from sales of lands by the State of Florida, through the Trustees of the Internal Improvement Fund, pursuant to Section 9 of the Murphy Act, being Chapter 18296, Laws of Florida, Acts of 1937, amounting to $709,794.14 as of April 5, 1941, together with such further proceeds from such sales, shall, after all costs of such sales are defrayed, be immediately transferred from the fund in which the same are now or may hereafter be deposited in the State Treasury to the General Revenue Fund of the State to be used in meeting the general expenses of the State."

This recent statute, is in my opinion, not only a perfectly valid statute, but it is in conformity with the interpretation placed by this Court upon Section 9 of the Murphy Act in Messer v. Lang and State ex rel. Hurner v. Culbreath, supra.

I think this interpretation, as made both by this Court and by the legislature, of the meaning and effect of the Murphy Act, and particularly of Section 9 thereof, should be adhered to, and insofar as the majority opinion holds to the contrary, I must respectfully but earnestly dissent.

WHITFIELD, J.:

Chapter 18315, Laws of Florida, became effective upon its approval by the Governor, June 2, 1937. It is carefully drawn and provides that:

"In any suit in equity brought by any county, city, village or town of this State for the purpose of con-

summating the enforcement in tax lien foreclosure proceedings of its tax or assessment liens, whether such liens be evidenced by taxes or assessments duly levied and assessed upon the tax assesment roll or by tax certificates or tax deeds owned and held by it, against property located therein, the State of Florida may be made a party defendant in such proceedings for the purpose of adjudicating therein its tax liens against said property and receiving from the proceeds of any foreclosure sale in such proceedings its proper and proportionate share of such proceeds in satisfaction of its said tax liens so adjudicated; and the State of Florida does hereby give its consent to be sued and made a party defendant in such suits for such purpose." (Sec. 1)

The express specific statutory limitation upon the consent given to sue the State in tax lien foreclosure proceedings "brought by any county, city, village or town of this State" is that "the State may be made a party defendant in such proceedings *for the purpose of adjudicating therein its tax liens against said property and* receiving from the proceeds of any foreclosure sale in such proceedings its proper and proportionate share of such proceeds in satisfaction of *its said tax liens* so adjudicated." This does not include statutory consent to sue the State when it has the legal title to lands covered by State tax sale certificates *discharged of any and all right of redemption by the former owners or others who* may have had *the privilege of redeeming* the land from State tax sale certificates.

On June 9, 1937, Chapter 18296, Laws of Florida, became effective. It provides special procedure for the redemption through sales by the clerk of the

circuit court "having custody or control of any tax sale certificates" held by the State of Florida "that are more than two years old when the Act became effective June 9, 1937. The clerk is required to offer such certificates together with all subsequent omitted or levied taxes for sale at public outcry to the highest bidder for cash, when written request is made by any person for such sale." Other provisions are made for advertisements, sales and the issue of tax deeds to lands so sold and not redeemed to purchasers, etc.

Sec. 9 of the Act is:

"This Act shall remain in full force and effect for two years from the date same shall become a law and at expiration of such four year period, then the fee simple title to all lands, against which there remains outstanding tax certificates which on the date this Act becomes a law, are more than two years old, shall become absolutely vested in State of Florida, and every right, title or interest of every nature or kind whatsoever of former owner of said property or anyone claiming by, through or under him, or anyone holding lien thereon shall cease, terminate and be at an end, and the State of Florida thereafter, through the Trustees of Internal Improvement Fund shall be authorized and empowered to sell the said lands to the highest and best bidder for cash at such time and after giving such notice and according to such rules and regulations as may be fixed and adopted from time to time by the said Trustees of the Internal Improvement Fund.

"After the expiration of two years from date this Act shall become a law, no court in this State, either Federal or State shall have jurisdiction to entertain any suit brought by the former owner of said land or

anyone claiming by, through or under him for the purpose of questioning, or in any way litigating or contesting the title of the State of Florida, or its grantee to said land."

The effect of Chapter 18296, effective June 9, 1937, is *to vest* in the State of Florida *on June 9, 1939,* "the fee simple title" to all lands, against which there remains outstanding State tax certificates held by the State that *on June 9, 1937, were more than two years old,* discharged of any right of redemption, thereby merging the State's tax liens into a legal title without a right of redemption. This took the State tax liens represented by State tax certificates covered by Chapter 18296, of June 9, 1937, from under the operation of Chapter 18315, of June 2, 1937, so the consent of the State to be sued does not extend to the lands to which the State has title *under Chapter 18296.* This does not affect any valid and subsisting tax liens held by the city in this case that are of equal dignity with State taxation, but prevents the State from being sued in the premises unless statutory consent is duly given. Chapter 18315 which became effective June 2, 1937, remains operative except in so far as it is affected by Chapter 18296 which became effective June 9, 1937.

In Bice v. City of Haines City, 142 Fla. 371, 195 So. 919, the question stressed was whether municipal tax sale certificates which are distinct from State tax sale certificates, were in effect cancelled by the Murphy Act, Chapter 18296, Acts of 1937, not whether in that case the entire relief prayer could legally be granted.

On this rehearing, our original judgment of reversal is adhered to and confirmed.

TERRELL, THOMAS, and ADAMS, JJ., concur.

BROWN, C. J., concurs in conclusion.

BUFORD, and CHAPMAN, JJ., dissent.

### ON REHEARING GRANTED
February 20, 1942

BUFORD, J., dissenting:

Our opinion in this cause is grounded upon the conclusion that the suit is one against the State and that the State through the legislature has not granted municipalities leave to sue the State in cases of this sort.

It is my opinion that the municipality has leave to maintain the suit under general law, viz: Chapter 18315, Acts of 1937, Section 1 of which Act provides:

"Section 1. In any suit in equity brought by any county, city, village or town of this State for the purpose of consummating the enforcement in tax lien foreclosure proceedings of its tax or assessment liens, whether such liens be evidenced by taxes or assessments duly levied and assessed upon the tax assessment roll or by tax certificates or tax deeds owned and held by it, against property located therein, *the State of Florida may be made a party defendant* in such proceedings for the purpose of adjudicating therein its tax liens against said property and *receiving from the proceeds of any foreclosure sale in such proceedings* its *proper and proportionate share of such proceeds in satisfaction of its said tax liens so adjudicated;* and the State of Florida does hereby give its consent to be sued and made a party defendant in such suits for such purpose. And in any such suit in equity, brought by a city, village or town the county and any taxing district, having tax or assessment liens against the property involved may likewise

be made a party defendant for the purpose of adjudicating and satisfying such liens therein." (Emphasis supplied.)

This Act must be read in pari materia with Chapter 18296, Acts of 1937, just the same as if the provisions of both Acts had been included in one Act.

By the provisions of Chapter 18296, supra, all State, County and district tax liens embraced within and evidenced by the State and County tax sales certificates were affected and the disposition thereof provided; but municipal tax liens remained unaffected by the provisions of that Act if the provisions of Chapter 18315, supra, are given effect. If Chapter 18315, supra, is not ascribed the effect which I insist it has, then the tax lien of the municipality and the security it has therein behind its financial obligations has been made ineffective and the municipality's power to enforce its lien is cut off because unless the State may be made a party defendant a sale under the municipal foreclosure can be of no avail as such sale would be made subject to the fee simple title in the State.

No one appears to question the conclusion that Chapter 18315, supra, was sufficient to authorize the municipality to make the State a party defendant in a suit to foreclose the municipal liens on property on which the State tax liens had not matured into title under the provisions of Chapter 18296, supra, nor does there appear any question that the municipality may under the terms of this Act make the State a party in foreclosure of tax liens which have accrued and become delinquent since 1939.

Now, my construction of the two Acts leads to the rationale that the legislature has, in effect, said:

"The State of Florida hereby provides for the final satisfaction of all State and County tax liens evidenced by certain aged state and county tax sale certificates outstanding, without prejudice, however, to the rights of municipalities to enforce their respective tax liens existing at the same time on the same property. To this end the municipality is granted the consent of the State to make the State a party defendant in suits wherein the municipality seeks to foreclose its tax liens which may be involved with State and County tax sale certificates."

The consent was absolute allowing the municipality to make the State a party defendant in all suits in which the municipality may seek to foreclose its tax liens and in such suits the State may be made such party defendant for the purpose " (a) of adjudicating therein its tax liens against the property; (b) and receiving from the proceeds of any foreclosure sale in such proceedings its proper and proportionate share of such proceeds in satisfaction of its tax liens so adjudicated."

If the legislature had intended that the consent to make the State a party defendant in suits only involving state and county tax sale certificates which had not matured by operation of law into title in the State the provision (a), supra, would have been all sufficient; but the legislature intended to provide a full and complete method for the clearing of all these antiquated tax liens and put the property as a live asset on the tax rolls. It, therefore, went further and granted the consent for the purpose of adjudication equitably prorating the proceeds of the foreclosure sale to be based upon the respective tax liens which had accrued by levies evidenced by the State and

County tax sale certificate on the one hand and which had accrued by levies by the municipality on the other hand and all of which remained unpaid.

The fee simple title of the State is based on the tax lien for the State and county taxes and probably other taxes as shown in the respective certificates, and was acquired pursuant to statutory enforcement of these liens. The statute here under consideration provides a method and a means under which the municipal liens would continue to be respected and could be enforced pro tanto with the liens under which the state became vested with the fee simple title, subject, however, to the municipal tax lien.

For the reasons stated, I recede from the opinion filed herein on December 16, 1941, insofar as it is determined by the views expressed in that opinion that this suit may not be maintained against the State. In all other respects, I adhere to our opinion and judgment, supra.