**JAMES ALEXANDER, Inc., et al. v.
UNITED STATES et al.**

No. 9821.

Circuit Court of Appeals, Fifth Circuit.
May 4, 1942.

J. T. G. Crawford and Olin E. Watts, both of Jacksonville, Fla., for appellants.

H. S. Phillips, U. S. Atty., of Tampa, Fla., W. Joe Sears, Jr., Sp. Asst. to the Atty. Gen., and John W. Ball, Sp. Atty., Department of Justice, both of Jacksonville, Fla., Norman M. Littell, Asst. Atty. Gen., and John F. Cotter, Atty., Department of Justice, both of Washington, D. C., for appellee United States.

J. Tom Watson, Atty. Gen., State of Florida, and Millard B. Conklin, Asst. Atty. Gen., State of Florida, for appellee State of Florida.

William D. Jones, Jr., of Jacksonville, Fla., for appellee Duval County Air Base Authority.

Before FOSTER, SIBLEY, and HUTCHESON, Circuit Judges.

SIBLEY, Circuit Judge.

This case began with a petition filed Feb. 20, 1940, by the United States to condemn lands in Duval County, Florida, for a naval aviation base. On April 15, James Alexander, Inc., answered claiming title to a parcel of the land, subject to a mortgage in favor of A. L. Lewis. Lewis answered claiming mortgage rights, and also that on March 5, 1940, he had bid in at a public sale for taxes the Alexander, Inc., land, paying $114 therefor. On April 24 the State of Florida filed answer claiming fee simple ownership of these lands, and praying an award of their value; and Duval County Air Base Authority also filed an answer, claiming fee simple title derived from the State under Chapter 19784, Sp.Laws of Florida of 1939, which created the Authority as a public corporation, and it prayed an award in its favor. The United States filed a declaration of taking and paid into court a sum tentatively fixed by the Secretary of the Navy as just compensation, and the court ordered possession surrendered to the United States. Alexander, Inc., and Lewis filed other pleadings attacking the title claimed by the State and the Authority, and the court on a hearing found that the Authority was the owner, and that Alexander, Inc., and Lewis had no title or lien on the land; and fixed the value of the land in contention at $1,320, which having been deposited, a full title was decreed vested in the United States. Alexander, Inc., and Lewis appeal. The State of Florida does not appeal, but by its Attorney General files a brief in support of the decree.

The court found and it is not disputed that the lands in contention were duly assessed for taxes in 1925 and 1928, and that proper sales were held in 1926 and 1929 at which the lands were bid off for the State of Florida and tax sale certificates regularly issued. Matters so stood until June 9, 1937, when Chapter 18296 of the Florida Laws for that year, known as the Murphy Act, was enacted, Section 9 of which purported to cut off two years thereafter all right of redemption of lands which had more than two years previous to June 9, 1937, been bid off for the State at tax sales. The validity of this provision is asserted by the State and the Authority, and denied by the appellants. On May 11, 1939, Chapter 19784, Laws of Florida of 1939, was enacted, creating and regulating the Authority; and Section 10 thereof purported to give the Authority the right "to take, exclusively occupy, use and possess, insofar as may be necessary for carrying out the provisions of this Act, any areas of land owned by the State of Florida, and within the territorial extent of said Authority * * * and, when so taken and occupied, due notice of such taking and occupancy having been filed with the Secretary of State by the Authority, such areas of land are hereby granted to and shall be the property of the Authority." The disputed land was so taken and occupied and notice thereof filed with the Secretary of State. The State does not contest the validity of this grant to the Authority, but the appellants contend it is contrary to Art. III, § 16, of the Florida Constitution because the title of the Act does not express any purpose to grant the State's land, and because the broad power given to select the land is an unauthorized delegation of legislative authority. Lewis contends he has standing thus to attack the grant, because of his claim to have bought the State's title at the second tax sale which occurred after the filing of the condemnation proceeding, at which he paid the price he bid, though the trustees of the Internal Improvement Fund of the State of Florida, who were conducting the sale pursuant to the provisions of the Murphy Act, declined to make a deed after learning of the grant to the Authority and of the condemnation proceeding, and tendered back to Lewis the money he had paid.

We hold Section 9 of the Murphy Act valid as against the contention made that it takes the property of appellants without due process of law, contrary to the Fourteenth Amendment, and impairs the previous mortgage contract of Lewis contrary to Art. I, § 10, of the Constitution of the United States. The Murphy Act refers to the vast accumulations of delinquent taxes and outstanding tax sale certificates held by the State, and the resulting inability of the State and County governments properly to function, and it

sought to put the overburdened lands which had been unredeemed more than two years back on the tax rolls by selling the tax certificates, on application, during a limited period for what they would bring, the defaulting owner being permitted to be a bidder. Section 9 seeks to bring this business to a conclusion at the end of two years from its enactment by declaring that all lands against which there are tax sale certificates more than two years old at the time the Act becomes a law shall, two years thereafter "become absolutely vested in State of Florida, and every right, title or interest of every nature or kind whatsoever of former owner of said property or anyone claiming by, through or under him, or anyone holding lien thereon shall cease, terminate and be at an end"; and that the State might thereafter sell the lands through the Trustees of the Internal Improvement Fund. The tax sale certificates to the State here involved were over two years old on June 9, 1937, when the Murphy Act became a law, so that two years later, June 9, 1939, the land covered by them became absolutely the property of the State, since neither the former owner nor the lienholder had caused them to be sold under the act. It is true, as appellants contend, that their rights under the tax certificates are fixed by the law at the date the certificates were made; and Sections 770, 776, and 777, 779 and 796 Revised General Statutes of 1920 are specially referred to. In Florida after default in payment of taxes on land, it is sold at public outcry in April, and if anyone bids as much as the taxes a "tax certificate" reciting the sale and describing the land is issued to him. If no one so bids, the land is bid off for the State and a certificate is issued to it. Section 770 provides that the owner or his creditor may redeem until a tax deed is issued; Section 779 states that the holder of a certificate may obtain a deed at any time after two years from its date, but Section 776 requires a published notice of the application for the deed, and Section 777 requires that a copy be sent by mail to the owner. Section 796 provides: "Where land is bid off by the tax collector for the State, the tax certificate shall be issued by the tax collector to the State, in the name of the treasurer, and if the land is not redeemed or the certificate sold by the State, the title to the land shall, at the expiration of the time for redemption vest in the State without the issuing

of any deed, as provided for in other cases * * * * and the certificate shall be evidence of the title of the State." The plain meaning is that while an individual holding a certificate must wait two years, and apply for a deed and give notice thereof, before redemption is cut off by the issuing of a deed, the State obtains title by the mere lapse of two years. The State needs no deed. We perceive no conflict between Section 770 and Section 796, the one applying to individual holders and the other to the State. But we understand that the State has always permitted an owner to redeem at any time before the State disposes of the land, (see McNee v. Wall, D.C., 4 F.Supp. 496; Wall v. McNee, 5 Cir., 87 F.2d 768, 769), and the Florida Supreme Court has referred to it sometimes as a right, sometimes as a privilege, but always, after two years, as a gratuity which might be cut off by the Legislature at its will. Ridgeway v. Peacock, 100 Fla. 1297, 131 So. 140; Messer v. Lang, 129 Fla. 546, 565, 176 So. 548, 113 A.L.R. 1073; State ex rel. Hurner v. Culbreath, 140 Fla. 634, 192 So. 814; Bice v. Haines City, 142 Fla. 371, 195 So. 919. The last three cases upheld the Murphy Act as being no interference with any vested right or contract, but the revocation of an indulgence or grace after the vesting of title in the State by the lapse of the two years redemption period. On this same ground we think the objections here based on the federal Constitution must fail. Furthermore, if there were a right, as distinguished from a privilege, to redeem surviving the lapse of two years, it was competent for the legislature to enact a limitation upon its exercise, provided a reasonable time is afforded to assert the right. Terry v. Anderson, 95 U. S. 628, 24 L.Ed. 365; Turner v. People of New York, 168 U.S. 90, 18 S.Ct. 38. 42 L.Ed. 392. The Murphy Act, § 9, is in effect a limitation law which gave all persons interested in lands against which the State held tax certificates two years or more old, another two years to redeem by proceeding under the Act, and thereafter bars them. These appellants, by failing to provoke a sale of the tax certificates prior to June 9, 1939, lost all right and title to the land or lien on it. Turner v. People of New York, supra.

 As to the second sale on March 5, 1940, at which Lewis was the successful bidder, the State's title did not pass,

if it still had title, for no deed was made and the transaction was called off. Lewis could have at most an equity of specific performance against the Trustees of the Board of Internal Improvement, perhaps enforceable against the proceeds of this land, and that only if the title of the State had not been validly granted to the Authority. While the District Court has jurisdiction to determine the owner of the money paid into its custody by the United States, it ought not unnecessarily to pass on the validity under the State Constitution of an act establishing a public corporation like the Authority, or to instruct public officers like the Trustees as to their duties, in order to aid an uncertain equity which is not even distinctly pleaded as such. It would be better to leave Lewis free to implead them and the Authority in the courts of the State, and there to impound the proceeds of this land, if so advised. Compare Railroad Commission v. Pullman Company, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971. Our decision is without prejudice to assert in such a proceeding any right Lewis may have under the attempted sale of March 5, 1940. Otherwise, the decree is

Affirmed.