**TRUSTEES OF INTERNAL IMPROVEMENT FUND OF FLORIDA et al. v. SOUTHWEST TAMPA STORM SEWER DRAINAGE DIST. et al.**

No. 10577.

Circuit Court of Appeals, Fifth Circuit.

May 8, 1944.

J. Tom Watson, of Tallahassee, Fla., Millard B. Conklin, of Daytona Beach, Fla., and Fred M. Burns and James H.

Millican, Jr., both of Tallahassee, Fla., James S. Moody, of Plant City, Fla., and Fred T. Saussy, Jr., of Tampa, Fla., for appellants.

W. F. Himes, of Tampa, Fla., for Southwest Tampa Storm Sewer Drainage Dist.

J. Bowers Campbell, of Washington, D. C., and W. F. Himes, of Tampa, Fla., for Reconstruction Finance Corporation, appellee.

Before SIBLEY, McCORD, and WALLER, Circuit Judges.

WALLER, Circuit Judge.

In the fall of 1939 the United States took, by condemnation, the fee-simple title to 5767 acres located within the confines of the Southwest Tampa Storm Sewer Drainage District (hereinafter referred to as "the Drainage District") for use as an Army Air Base. In due course a jury determined the amount of just compensation and the sum was deposited with the Court. The fee-simple title to some of the lands had been forfeited to the Trustees of the Internal Improvement Fund of the State of Florida (hereinafter referred to as "the Trustees") under the so-called "Murphy Act" (Sec. 9 of Chapter 18296, Laws of Florida, 1937, F.S.A. § 192.38 note), for nonpayment of state and county taxes. There was a large accumulation of delinquent drainage taxes on all of the lands involved. The award in compensation was less than the amount of the delinquent drainage taxes. Bonds issued by the Drainage District were largely in default, the largest holder of which was the Reconstruction Finance Corporation which had bought same with the purpose of aiding the Drainage District in its financial rehabilitation. The State claimed the full amount of the award for all lands to which it owned the fee-simple title. There was also a controversy between the State and the District, or its bondholders, as to how the award should be distributed in the payment of the taxes due State, County, and Drainage District on lands which had not been forfeited to the State under the Murphy Act. The record title holder, or the party who owned the lands prior to the loss of his title by the Murphy Act, has faded from the scene. The award was insufficient to discharge the lien of all accumulated taxes.

The chief issue arises out of the conflict between the State, represented by the Trustees of the Internal Improvement Fund, as the fee-simple owner of the title to those lands acquired under the Murphy Act, and the District, or its bondholders, over the question as to whether or not the State is entitled to receive the award, or any part thereof, or whether or not the title of the State is subject to liens for delinquent drainage taxes due the District.

Prior to 1927 the lien for taxes of the State and County was superior to the lien of the Drainage District, but the Legislature, by the enactment of Sec. 2 of Chapter 12040, Acts of 1927, F.S.A. § 298.41, made drainage taxes of equal dignity with state and county taxes.

The Supreme Court of Florida held in Prince Hall Masonic Building Association v. City of Jacksonville, 149 Fla. 109, 6 So.2d 250, that the tax liens of the State which were more than two years old on June 9, 1937, merged into the State's legal title under the Murphy Act. See opinion on rehearing, 6 So.2d 255. Therefore, the State had no tax liens on the lands which it acquired under the Murphy Act. That Court also held, in Carlile v. Melbourne-Tillman Drainage District, 143 Fla. 355, 196 So. 687, that the title to land in a drainage district acquired under the Murphy Act went to the State, subject to, and burdened with, the lien of drainage district taxes, citing as authority Bice v. Haines City, 142 Fla. 371, 195 So. 919. See also Baldwin Drainage District, a corporation, v. MacClenny Turpentine Company, Fla., 18 So.2d 792. It was also held in Prince Hall Masonic Building Association v. City of Jacksonville, supra, that although the lien of a municipality under its tax certificates was not lost when the lands covered by such certificates were taken by the State under the Murphy Act, nevertheless the municipality could not enforce its lien against the State in the absence of specific authority from the Legislature to do so. The State could not be sued without its consent.

The foregoing cases reveal that: (1) the State has the legal title to lands which it acquired on delinquent and unredeemed certificates which were more than two years old on June 9, 1937; (2) that the lien of the State under such delinquent tax certificates merged into the State's fee-simple title to such lands; and (3) that the lien of the District for drainage taxes on such lands remained outstanding but

unenforcible so long as the lands were owned by the State.

■ Since the lien of the State for delinquent taxes on lands acquired under the Murphy Act has merged into the legal title, the State no longer has any lien for taxes on such lands, and, therefore, having no lien, it can have neither priority nor parity in liens for such taxes. The drainage taxes remain outstanding, even if unenforcible, despite State ownership.

We are not confronted with an effort on the part of the District to foreclose its drainage taxes. We are called upon to determine whether or not the award must be applied to the satisfaction of the tax liens of the District to the end that the United States may have a title free and clear of all liens and encumbrances, which it has a right to acquire through the condemnation proceedings. Under the decisions of the Florida Supreme Court, which are binding on us, the drainage taxes remained a lien, but the tax liens of the State, having merged into its legal title, were no longer liens or encumbrances on the title of the United States. Paradoxical as it may seem, the State by becoming the owner of the greater estate, to-wit, the fee-simple title in said lands, became the holder of a diminished right in this case. It became the owner of the title subject to tax liens of the District which were much in excess of the value of the lands. By the acquisition of the fee-simple title it lost its liens, and the lien of the Drainage District became the first lien. The United States is entitled to have that lien satisfied out of the award in compensation. If it should seem unusual or unjust that the State (whose rights are generally prior, or at least equal, to those of its political subdivisions) in the circumstances here gets nothing while the subdivision gets all, the Courts can only say that this is not a web of their weaving, but is the result of legislative enactments. The order of the Court below as to the Murphy lands is according to law and is approved.

■ The Trustees contend that the Court below was without jurisdiction in that the District and the bondholders are not permitted to sue the State without its consent. We do not agree. Assuming that the Federal Government has the right through eminent domain to take lands belonging to a state, which is not questioned, this case then presents merely a proceeding in eminent domain in which is drawn into controversy the question of the distribution of the award. The State, the District, and the bondholders claimed the award, and a judicial determination of the issue is appropriate to the exercise of the power of eminent domain.

The Court below was without error in its order relating to the distribution of the award for the payment of state, county, and drainage taxes on a parity basis as to lands to which the State did not have the fee-simple title under the Murphy Act.

The judgment below is affirmed.