**STATE OF FLORIDA v. EVERGLADES DRAINAGE DISTRICT, et al.**

20 So. (2nd) 397           June Term, 1944
January 5, 1945          En Banc
Rehearing denied January 29, 1945

*J. Tom Watson,* Attorney General, *Lamar Warren* and *Fred M. Burns,* Assistant Attorneys General, for appellant.

*M. Lewis Hall* and *Giles J. Patterson* for appellees.

TERRELL, J.:

This suit was brought by the Attorney General in the name of the State against the Board of Commissioners of Everglades Drainage District and others to secure a declaratory judgment as to the validity of Everglades Drainage District taxes upon the following classes of State lands:

(a) Murphy lands owned by the State under Chapter 18296, Laws of Florida, Acts of 1937,

(b) Settlement lands acquired by the Trustees of the Internal Improvement Fund in a settlement with the Board of Commissioners of Éverglades Drainage District under Section 65, Chapter 14717, Laws of Florida, Acts of 1931;

(c) Swamp and overflow lands held by the Trustees of the Internal Improvement Fund under the Swamp Land Grant Act of Congress;

(d) Reclaimed lands held by the trustees of the "Internal Improvement Fund uder Section 253.36, Florida Statutes, 1941, and Chapter 7861, Laws of Florida, Acts of 1919; and

(e) Sovereignty lands which vested in the State on its admission into the Union.

It is contended by the bill of complaint that State owned lands in the Everglades Drainage District cannot be taxed and that the attempt to make the lien of Everglades Drainage District taxes equal in dignity to the lien of State and County taxes on State owned lands is invalid because (1) the title of Chapter 14717, Acts of 1931, and amendments thereto violate Section 16, Article III of the Constitution in that no intention is shown to tax State owned lands. (2) A tax on State owned lands is contrary to Section 4, Article XII of the Constitution relating to the public school fund, (3) Section 298.36, Florida Statutes of 1941, in so far as it applies to Murphy lands and settlement lands is unconstitutional, (4) the title of Chapter 14717, Acts of 1931, is not sufficient to make the lien of State and County taxes and the lien of Everglades Drainage District taxes of equal dignity, (5) Murphy lands and settlement lands being tax forfeited lands are not subject to taxation, (6) Reclaimed lands acquired by the State from the recission of Lake Okeechobee are not taxable and (7) Lake bottom or sovereignty lands are not taxable.

The chancellor granted a motion to dismiss the bill of complaint on the theory that all questions raised by it had been answered contrary to the contention of the Attorney General in former decisions of this Court except the question of taxing lands in the bed of Lake Okeechobee and as to such lands, he held that the applicable statutes would not be construed as being sufficient to tax them. The final decree also held that under Chapter 21820, Acts of 1943, (the Act under

which the bill was brought), the Attorney General was authorized to bring suit to construe statutes defining the power by State officers over lands owned by the State of Florida. This appeal is from the final decree.

Numerous questions are argued but the only question we are required to consider is whether or not this is such a suit as was authorized under Chapter 21820, Acts of 1943.

It may be admitted that the Attorney General is authorized to bring suit to construe Statutes of Florida relating to the power of State officers over lands belonging to the State but the instant suit goes much further than that and for the reasons stated hereafter, we do not think a suit like this was contemplated by Chapter 21820, Acts of 1943.

The Everglades is a portion of the vast domain that was acquired by the State of Florida from the Federal Government under the Swamp Land Grant Act of 1850. The movement to drain the Everglades had its inception more than 100 years ago but no definite policy looking to that end was formulated until Honorable N. B. Broward became Governor. Governor Broward made his campaign on that issue and commenced drainage operations in 1903; the first drainage tax was imposed by Chapter 5377, Acts of 1905; this was increased by Chapter 5709, Acts of 1907 and in 1913, by Chapter 6456, the Everglades Drainage District was created, composed of approximately 4,000,000 acres of land and an acreage tax, according to benefits, was spread over the entire area.

Chapter 6456, Acts of 1913, has been repeatedly amended, all amendments having to do with administration and zoning the area in the Everglades Drainage District so as to graduate the tax according to benefits. Prior to 1931, the Board of Commissioners of Everglades Drainage District was the administrative agent of the District and was composed of the Governor, Comptroller, Attorney General, Commissioner of Agriculture, and State Treasurer, the same personnel as the Trustees of the Internal Improvement Fund which holds title to the lands and administers them on behalf of the State. The fact that State lands may be assessed for drainage and that the lien for drainage taxes may be made of equal dignity with the lien for State and County taxes is too well settled

to require discussion. School lands and sovereignty lands have never been taxed to support the drainage project.

Under the acts referred to in the preceding paragraph millions of dollars in bonds have been issued, hundreds of miles of canals, many locks and other drainage works have been constructed, thousands of acres of lands have been reclaimed and now there are thriving communities with schools, churches and industries where formerly the stentorian voice of the bull frog and the alligator were the dominant notes.

The trustees and the board participated in drafting the Acts referred to herein; they were enacted by the Legislature on their approval; the Board directed the drainage operations, issued the bonds, spent the bond funds and were officially responsible for originating and carrying out the policy of this great enterprise. Every Attorney General for more than forty years has been a party to, actively participated in, and approved these proceedings. The lands of the State were included in the tax program on the theory that they should bear their just portion of the burden of reclamation. All of the Acts referred to in terms provide that the State of Florida is in no sense bound for the credit of the District though it is not denied that State owned lands bear their just portion of the expense. It is too well settled to require the citation of authority to support it that constitutional and statutory exemption from taxation is limited to taxation for State and County purposes and has no reference to special assessments.

The effect of this litigation if it succeeds, is to reverse the policy heretofore outlined and relieve State lands of any obligation as security on the bonds of the Everglades Drainage District. This is one of the main bases on which its integrity and credit were established and should not be permitted.

We have thoroughly examined every question raised by the bill of complaint and find each of them conclusively settled by adjudication of this Court contrary to the contention of appellant. Lainhart v. Catts, 73 Fla. 735, 75 So. 47; Martin v. Dade Muck Land Company, 95 Fla. 530, 116 So. 449; Rorick v. Reconstruction Finance Corporation, 144 Fla. 539, 198 So. 494; Trustees Internal Improvement Fund v. Bailey, 10 Fla.

112; Everglades Sugar and Land Company v. Bryan, 81 Fla. 75, 87 So. 68; Baldwin Drainage District v. MacClenny Turpentine Company, 154 Fla. 525, 18 So. (2nd) 792; State of Florida v. Everglades Drainage District, decided October 20, 1944, not yet reported.

For these and other reasons, we do not think Chapter 21820, Acts of 1943, contemplated this kind of a suit so the decree appealed from is affirmed.

Affirmed.

BUFORD, C. J., BROWN, CHAPMAN, THOMAS, ADAMS and SEBRING, JJ., concur.