**BOSTWICK et al. v. BALDWIN DRAIN-AGE DIST. et al., and four other cases.**

Nos. 11347, 11348, 11354, 11355, 11407.

Circuit Court of Appeals, Fifth Circuit.

Nov. 29, 1945.

Rehearing Denied Jan. 7, 1946.

Thos. B. Adams, of Jacksonville, Fla., for appellants.

Giles J. Patterson and J. W. Harrell, both of Jacksonville, Fla., and J. Edward Williams, Acting Head, Lands Division, Department of Justice, and Roger P. Marquis, Atty., Department of Justice, both of Washington, D. C., for appellees.

Before HUTCHESON and LEE, Circuit Judges, and RUSSELL, District Judge.

LEE, Circuit Judge.

Appellants are owners of and lien claimants to property situated in Duval County, Fla., lying within the Baldwin Drainage District. Appellees are the said Drainage District (which was created as a public corporation by judicial decree in 1916 under an enabling act of the Florida Legislature in 1913, F.S.A. § 298.01 et seq.), its lessee, and its principal bondholder. The litigation here involved arose from the filing by the respective parties of rival claims upon funds paid into court by the government in condemnation proceedings as just compensation for the appropriation of the lands.

For present purposes it may be assumed that appellants would be entitled to the funds in contest but for the claim of the district for delinquent drainage taxes assessed against the lands. In separate but substantially identical answers in the lower court appellants assigned many reasons why the taxes asserted by the district should not be recognized as valid claims. However, upon the motion of counsel for the district, these allegations were stricken by the trial court and an order of distribution was entered which allowed in full the claims of the district. These appeals are prosecuted from these rulings.

To appreciate fully the basis of the decision below, the background of this litigation must be summarized. As stated, the drainage district was created in 1916. Prior to 1922 its supervisors authorized three bond issues to raise funds to pro-

mote and maintain its undertakings, and taxes were levied upon the lands theoretically proportionate to the improvements resulting to each particular tract. Contracts were let for the construction and maintenance of the drainage system. During each year from its formation forward the supervisors of the district were charged with the duty to direct the affairs of the district in a manner that was in harmony with the intent and spirit of the statutes creating it and was equally faithful to the rights and interests of its taxpayers and its bondholders. Appellants, or those through whom they claim title, were the taxpayers of the district from the time of its inauguration.

The record does not affirmatively establish that the supervisors of the district at all times discharged their heavy responsibility perfectly. Indeed, in this and other litigation of recent origin, it is charged that the formation of the district was improper and illegal, and that practically all of its early acts either were void or should not be enforced. As the court in one of those cases said, "the exceptions ran the full gamut of the district's existence from its very inception." These specific charges having been set forth fully in several reported cases,[1] we are not warranted to state them here anew, particularly in view of the fact that our decision must be rested upon a ground that does not involve the merits of these allegations.

■ Our course here has been charted by the Supreme Court of Florida, and we must follow it. We point to the cases of State by Watson v. Covington et al., 148 Fla. 42, 3 So.2d 521, and Baldwin Drainage District v. MacClenny Turpentine Co., 154 Fla. 525, 18 So.2d 792. In the first case this drainage district was held to be at least a de facto corporation and to have the rights and powers of such; and in the second it was adjudged that the property owners of the district were estopped to challenge the propriety of the formation or acts of the district by the acquiescence

of themselves and their predecessors in title over a period of more than 27 years. For the reasons assigned in the MacClenny case, appellants here are in no better position with regard to the applicability of the doctrine of estoppel by acquiescence than were the property owners in that case.

In this case appellants also contended that the alleged malfeasances committed by the district rendered invalid the taxes levied by it, and that the enforcement of the payment of the taxes would deprive them of their property without due process of law. It is argued that this issue was not involved in the MacClenny case and was not, therefore, foreclosed against them by that decision. We cannot agree. The right claimed to be protected by the Fourteenth Amendment was violated, if it was infringed at all, by the other acts and omissions of which appellants complain. The acquiescence which estopped them to enforce their particular rights likewise operates as a waiver of the general right to enforce due process.[2] For these reasons we are of the opinion that all the judgments should be affirmed except that involved in the appeal of I. Otto Brown in case No. 11348 and in case No. 11355.

■ The circumstance which distinguishes Brown's appeal from the others is this: Under the Act of 1913, the lien created in favor of drainage taxes was made subordinate to the lien of state and county taxes. By an amendment in 1927, F.S.A. § 298.41, the drainage-tax lien was placed on a parity with state and county tax liens. The Florida Supreme Court has ruled that a tax deed based on a certificate issued for the nonpayment of state and county taxes, if executed prior to the effective date of the 1927 amendment, created an independent title from the State of Florida free of the inferior lien for drainage taxes.[3] Though the record is not clear upon the point, it appears likely that Brown acquired the tax deed under which he claims under a certificate purchased at a time when such a deed might have ex-

[1] Bostwick v. Baldwin Drainage District, 5 Cir., 133 F.2d 1; State by Watson v. Covington et al., 148 Fla. 42, 3 So.2d 521; Baldwin Drainage District v. MacClenny Turpentine Co., 154 Fla. 525, 18 So.2d 792.

[2] Cf. Pierce v. Somerset Ry. Co., 171 U.S. 641, 19 S.Ct. 64, 43 L.Ed. 316; Eustis v. Bolles, 150 U.S. 361, 14 S.Ct. 361, 37 L.Ed. 1111; Shepard v. Barron,

194 U.S. 553, 24 S.Ct. 737, 48 L.Ed. 1115; Utley v. City of St. Petersburg, 292 U.S. 106, 54 S.Ct. 593, 78 L.Ed. 1155.

[3] Sugar Bowl Drainage District v. Miller, 120 Fla. 436, 162 So. 707; Cf. Baldwin Drainage District v. MacClenny Turpentine Co., 154 Fla. 525, 18 So.2d 792; State Adjustment Co. v. Winslow, 114 Fla. 609, 154 So. 325.

tinguished all existing drainage tax levies and all future drainage tax levies for debt service purposes. If so, the claim filed by the district against the fund paid into court for the acquisition of Brown's property should have been disallowed, at least to the extent of such taxes. It is therefore appropriate that the judgments as to Brown should be reversed and the causes remanded to the court below for a judicial determination of this question.

The judgments as to all appellants except I. Otto Brown in case No. 11348 and in case No. 11355 are affirmed, and the judgment as to I. Otto Brown in each of said cases is reversed and the two causes are remanded to the District Court for further proceeding consistent with this opinion.