## BALDWIN DRAINAGE DIST. v. BROWN
### (two cases).

Nos. 12065, 12066.

Circuit Court of Appeals, Fifth Circuit.

Jan. 6, 1948.

Rehearing Denied Feb. 6, 1948.

Giles J. Patterson and Edward S. Hemphill, both of Jacksonville Fla., for Baldwin Drainage District.

Thos. B. Adams, of Jacksonville, Fla., for I. Otto Brown.

J. W. Harrell, of Jacksonville, Fla., for intervener.

Before SIBLEY, HUTCHESON, and HOLMES, Circuit Judges.

HUTCHESON, Circuit Judge.

When this controversy was here before [1] as a part of several appeals, we affirmed all of the judgments except those involved in the appeals of I. Otto Brown, saying as to them: "The circumstance which distinguishes Brown's appeal from the others is this: Under the Act of 1913, the lien created in favor of drainage taxes was made subordinate to the lien of state and county taxes. By an amendment in 1927, F.S.A. Sec. 298.41, the drainage-tax lien was placed on a parity with state and county tax liens. The Florida Supreme Court has ruled that a tax deed based on a certificate issued for the nonpayment of state and county taxes, if executed prior to the effective date of the 1927 amendment, created an independent title from the State of Florida free of the inferior lien for drainage taxes.* Though the record is not clear upon the point, it appears likely that Brown acquired the tax deed under which he claims under a certificate purchased at a time when such a deed might have extinguished all existing drainage tax levies and all future drainage tax levies for debt service purposes. If so, the claim filed by the district against the fund paid into court for the acquisition of Brown's property should have been disallowed, at least to the extent of such taxes. It is therefore appropriate that the judgments as to Brown should be reversed and the causes remanded to the court below for a judicial determination of this question."

We reversed the judgments as to Brown and remanded the causes for a determination as to whether Brown acquired his tax deed "under a certificate purchased at a time when such a deed might have extinguished all existing drainage tax levies and all future drainage tax levies for debt service purposes".

On the rehearing in the trial court, it appearing that the certificate issued for delinquent state and county taxes for 1924 was purchased August 3, 1925, and the tax deed was executed February 1, 1928, the district judge construed our opinion "as holding that the state and county tax certificate purchased prior to the 1927 amendment to the drainage law controlled and operated to extinguish all existing drainage taxes and all future drainage tax levies for debt service purposes". He, therefore, "restricted the rehearing solely to a determination of the amount of maintenance taxes levied against the lands subsequent to 1924". Of the opinion that the District had a valid lien for these, he gave judgment accordingly, and both the District and Brown have appealed from the judgments, the District from their disallowance of liens for drainage taxes, Brown from their allowance of maintenance tax liens.

The District, on its appeals, is here insisting; that we did not say what the district judge construed our opinion as saying; that if we did say it, we did not mean it; and that if we said and meant it, we were wrong in our determination of Florida law, and should now rule otherwise.

[1] Bostwick, et al. v. Baldwin Drainage Dist., et al., and four other cases, 5 Cir., 152 F.2d 1, 2.

* Sugar Bowl Drainage Dist. v. Miller, 120 Fla. 436, 162 So. 707; Cf. Baldwin Drainage Dist. v. MacClenny Turpentine Co., 154 Fla. 525, 18 So.2d 792; State Adjustment Co. v. Winslow, 114 Fla. 609, 154 So. 325."

Brown, vigorously defends the district judge's conclusion as to what we said and meant as to the drainage taxes and that we were right in saying so. He vigorously attacks the judgment awarding a lien for maintenance taxes as wrong, (1) because the proof was insufficient to support the judgment that they were levied, (2) because if the proof showed their levy, Brown's deed freed the property as well from maintenance as from drainage liens, and (3) because, since the entry of the judgment, the Legislature of Florida, by House Bill No. 977, an act to give relief with respect to Baldwin Drainage District taxes, effective June 6, 1947, has cancelled all maintenance taxes.

It is quite clear, we think, that the district judge correctly read and gave effect to our opinion. We might, therefore, invoking the rule that our former opinion is the law of the case, dispose of the District's appeal by saying briefly but politely, "In our reversing opinion we said what we meant and meant what we said, and we are not disposed to reconsider it". The Florida decisions, interpreting and applying the various tax statutes of Florida enacted since the issuance of the tax certificate under which Brown holds, have, however, created a veritable wonderland[2] of tax law in the darkling shades of which the neophyte, and sometimes even the initiate may lose his way. Because they have, we shall here more fully state the reasons for the conclusions we reached there, and, separating the applicable from the inapplicable, marshal the Florida authorities in support.

In 1924, the liens for state and county taxes, for the delinquency of which the certificate underlying Brown's title was issued in 1925, were superior to drainage assessment liens.[3] Neither the act of 1927, which put drainage liens on a parity with tax liens, nor that of 1929, c. 14572, providing for foreclosure of the liens of tax certificates and tax deeds,[4] nor the act of 1937, the Murphy Act, F.S.A. § 192.35 note, nor any later statute, dealing with tax liens and priorities, could or did impair the rights of the holder of the certificate or the grantee in the deed obtained by him as such certificate holder.[5] The District's arguments, and its citation of authorities[6] in support, that the tax deed under which Brown claims title did not vest him with a title which cut off all drainage liens because it was a statutory tax deed and not one obtained in a foreclosure proceeding, will not at all do. No attack whatever is made on the effectiveness or regularity of the deed. No basis for such attack appears. This being so, under the law of Florida, which is that "if the tax deed is valid, the former record title is extinguished and terminated by operation of law", the tax deed under which Brown holds vested a new and independent title which, starting then from scratch, was clear of all inferior drainage liens. With the precision and clarity which distinguish his judicial utterances, Judge Strum, then on the Florida Supreme Court, in Stuart v. Stephanus, 94 Fla. 1087, 114 So. 767,[7]

---

[2] Trustees v. Southwest Storm Sewer Drainage Dist., 5 Cir., 142 F.2d 637.

[3] Baldwin Drainage Dist. v. MacClenny, 154 Fla. 525, 18 So.2d 792; Sugar Bowl Drainage Dist. v. Miller, 120 Fla. 436, 162 So. 707; State Adjustment Co. v. Winslow, 114 Fla. 609, 154 So. 325; City of Sanford v. Dial, 104 Fla. 1, 142 So. 233; Allison Realty Co. v. Graves Inv. Co., 115 Fla. 48, 155 So. 745.

[4] Allison Realty Co. v. Graves, 115 Fla. 48, 155 So. at page 748.

[5] State Adjustment Co. v. Winslow, 114 Fla. 609, 154 So. 325; Sugar Bowl v. Miller, 120 Fla. 436, 162 So. 707.

[6] Sanford v. Dial, 104 Fla. 1, 142 So. 233; Certain Lands v. City of Sebastian, 129 Fla. 233, 176 So. 121; Poekel v. Dowling, 101 Fla. 1171, 132 So. 836; Bice v. Haynes City, 142 Fla. 371, 195 So. 919; Smith v. Arcadia, 147 Fla. 375, 2 So.2d 725, 135 A.L.R. 1458; State v. Everglades, 155 Fla. 403, 20 So.2d 397; Jackson v. City of Lake Worth, 156 Fla. 452, 23 So.2d 526.

[7] "When the state executes and delivers a tax deed, it is not a mere conveyance, in invitum, of the title of the former owner. A tax title is not dependent upon the validity of the title of the former owner. It is not a derivative title, nor is it in privity with the former record title. It is not merely the sum of all the existing titles, but, if valid, a tax deed creates in the grantee a new title in the nature of an independent and paramount grant by the sovereign authority made in the exercise of its power to compel a proportionate

laid down the law as to the kind and quality of title conveyed by a tax deed. The subsequent Florida decisions, in no manner departing from the views there expressed, have affirmed and reaffirmed them.

"The law of this state is that a tax title has nothing to do with the previous chain of title and is not in any way connected with it, but that it is the breaking up of all previous titles and extinguishes and destroys all other titles and ordinary liens, and consequently the issuance of a valid tax deed creates in the purchaser a new and original title entirely disconnected with that of the former owner, going back no further than the tax sale and not incumbered with any previous lien or collateral interests subordinate to the dignity of the tax lien as fixed by the statute in relation to other liens and collateral interests. See Stuart v. Stephanus, 94 Fla. 1097, 114 So. 767." Dean v. Kane, 106 Fla. 814, 143 So. 656, at page 657.

"This court has recently reaffirmed the doctrine that the issuance of a valid tax deed creates in the purchaser a new and original title entirely disconnected with that of the former owner and not incumbered with any previous lien subordinate in dig-nity to the tax lien." Hecht v. Wilson, 107 Fla. 421, 144 So. 886, 887.

We, therefore, on the District's appeals, affirm the judgments.

On Brown's appeals, the path of the law is not so plain, for it is quite clear that in our former opinion we did not have in mind or intend to draw the distinction between drainage and debt service taxes, on the one hand, and maintenance taxes, on the other, drawn by the court below, and that we must decide the questions posed on Brown's appeal as questions of first impression here.

The Drainage District, in its brief, has this to say on maintenance taxes:

"There are only two distinctions between maintenance taxes and installment taxes for debt service.

"Total Taxes are levied as a portion of the assessed benefits and the installments and the Total Taxes are both pledged to secure payment of the bonds of the District. * * *

"The amount of each annual maintenance tax levy is determined at the time of the levy, but must be apportioned in accordance with the assessed benefits. *They are not a part of any Total Tax and were not*

contribution toward the expense of government by levying a tax against the property and coercing its payment by subjecting the property to sale in default of payment. A sale of the property by the sovereign in the exercise of that power operates upon the land itself and not upon the title by which it had theretofore been held. In the ordinary case, it matters not how many different interests may have been connected with the former title, *for, if the tax deed and the antecedent procedure are regular and in conformity with law, the land, accompanied by a new, exclusive, complete, and paramount title, goes to the purchaser.* (Emphasis supplied.)

"The validity of a tax title depends upon a strict compliance with the provisions of law under which they are created. These laws are strictly construed in favor of the taxpayer, and such titles are frequently rendered nugatory by errors committed in carrying out the procedure prescribed by law for the creation of such titles. * * *

"If, however, the tax deed and antecedent proceedings are valid and regular, then from the time of the delivery of the deed the grantee is clothed not merely with the title of the person who was last seized of the fee, but with a new, complete, exclusive, and paramount title in a new right under and an independent grant from the sovereign authority. The tax title thus created has nothing to do with the previously existing chain of record title, nor does it in any way connect itself with it. The issuance of a valid tax deed extinguishes or terminates by operation of law all prior existing titles resting in private ownership and all equities arising out of them. Such former titles are no longer operative. In this respect there is no analogy between a tax title and an ordinary chain of record title.

"Generally speaking, the person asserting such a tax title need go no further than his tax deed. The deed is the inception of that title and is prima facie evidence thereof. Brown v. Castellow, 33 Fla. 204, 14 So. 822. If the tax deed is valid, the former title can neither assist nor prejudice the tax title. The tax grantee takes a complete and perfect title by another right, by a new, independent, and paramount grant."

*pledged to payment of debts.* If there be any difference in the legal status of the liens for these taxes, that difference should result in holding the Installment Taxes valid. Once extinguished they cannot be relevied. Maintenance taxes can be levied indefinitely, within the limit of the statute. None of the decisions of the Florida Court relating to the lien of Drainage taxes has made any distinction between these two types of taxes. * * *" (Emphasis supplied.)

Brown, in his brief, urges upon us that the award for maintenance taxes was wrong both because the tax deed cut off maintenance, as well as drainage, taxes, and because, if it did not, the District made no proof that valid levies for maintenance taxes were made. He relies principally, however on: the admission that as to Brown's lands no maintenance work was done subsequent to the date of the issuance of the tax certificate;[8] the admission as to maintenance taxes in the District's brief, "they were not part of any Total Tax and were not pledged to payment of debts"; and on the Legislative Act finding, that the District has never done anything toward physical maintenance and no maintenance benefits have ever been derived by lands in the District, and its enactment in Section 3 cancelling all maintenance tax levies.

■ We cannot agree with Brown's contention that the district judge's finding, that maintenance taxes were levied in the amounts found by him, is without support in the evidence. Neither can we agree that proof of failure to use, for maintenance, maintenance taxes the District had collected from others and that Brown's lands have had no benefit from the maintenance tax would in this collateral attack upon the levies be available to Brown, a defaulting taxpayer, to defeat them. The teachings of Baldwin Drainage District v. MacClenny, 154 Fla. 525, 18 So.2d 792, are to the contrary.

■ As to his contention that the tax deed, which freed the property from the Drainage District's levies, freed it also from future levies for maintenance taxes, we think Sanford v. Dial, 104 Fla. 1, 142 So. 233, is to the contrary.

■ When it comes, though, to Brown's final point, the validity of the Florida statute as to, and its effect in, wiping out all maintenance tax levies, we agree with the view announced by Judge Ogilvie,[9] that "the bondholders have no rights to the proceeds of the maintenance taxes levied by the District and that under the facts" found by the Legislature and established in this record, "Sec. 3 of Chapt. 23942, cancelling maintenance taxes, was a valid exercise of legislative power." The District, as such, a creature of the state, cannot complain of the action. Nor, since, as it admits in its brief, and as we believe to be so, maintenance taxes are not pledged for the payment of the bondholders' debt, has the District, as the representative[10] of the bondrolders, any standing to urge for them a complaint against their cancellation.

On Brown's appeal, the judgment is reversed and rendered in his favor. On the District's appeal it is affirmed.

---

[8] In a colloquy between the Court and Mr. Patterson, the Drainage District's counsel, this was said:

"The Court: I think for the purpose of this case the court might take it as correctly stated by Mr. Patterson that there were practically no moneys spent for physical maintenance subsequent to the date of the issuance of the tax certificate in this case.

"Mr. Patterson: That is correct."

[9] In State of Florida, ex rel. Adco, a corporation, et al., Relators, v. Baldwin Drainage District, a public corporation, et al., Respondents, in the Circuit Court of the 4th Judicial Circuit of the State of Florida in and for Duval County.

[10] Kersh Lake Drainage Dist. v. Johnson, 309 U.S. 485, 60 S.Ct. 640, 84 L. Ed. 881, 128 A.L.R. 386.